In the Matter of JAMES CABLE
PARTNERS, L.P., Debtor.

**Bankruptcy No. 91–52221.**

United States Bankruptcy Court,
M.D. Georgia,
Macon Division.

Dec. 4, 1992.

Morris W. Macey, James R. Sacca, Atlanta, GA, for James Cable Partners, L.P.

David A. Rabin, Frank W. Deborde, Atlanta, GA, for City of Jamestown, TN.

Nicholas Tanelli, New York City, for Sandler Media Group, Inc.

Mark Roadarmel, Asst. U.S. Trustee, Macon, GA.

## MEMORANDUM OPINION

ROBERT F. HERSHNER, Jr., Chief Judge.

The City of Jamestown, Tennessee, (the "City") filed its "Objection to Confirmation and Assumption of Cable Franchise Agreement" on July 17, 1992. James Cable Partners, L.P., Debtor, filed a response on October 8, 1992. A hearing was held on October 13, 1992. The Court, having considered the arguments and the briefs of counsel, now publishes this memorandum opinion.

In 1977, the City granted an exclusive cable television franchise to Clarence R. Harding. The city ordinance granting this franchise provides, in part:

SECTION 12. The rights and privileges herein granted shall not be assignable nor transferable in any bankruptcy proceedings, trusteeship, receivership or by operation of any law, and in the event of such assignment or transfer, this grant shall terminate forthwith, nor shall said company sell, lease, assign, or otherwise alienate this grant or any privilege

hereunder without the prior approval of the Board of Mayor and Aldermen.

Jamestown, Tenn., Ordinance I § 12 (March 1, 1977).

The City subsequently consented to assignment of the franchise to Mountain Cablevision and later to Paradigm Communications, Inc. In June of 1988, the City consented to assignment of the franchise to Debtor. The City and Debtor executed a Memorandum of Agreement in which the City further consented to Debtor's assignment of the franchise as security for certain loans. Debtor pledged the franchise to Citibank, N.A., as security for a loan. Debtor paid the City $1.5 million for the franchise. Debtor has spent $500,000 on improvements to the cable system.

Debtor filed a petition under Chapter 11 of the Bankruptcy Code on June 26, 1991. This Court entered an order on August 4, 1992, providing "that the confirmation of Debtor's plan shall in no way prejudice the City's objection to the assumption of the subject franchise agreement and that in the event the plan is confirmed, the issues of the Debtor's assumption of the subject franchise agreement shall be deemed reserved for further consideration by the Court."

This Court confirmed Debtor's plan of reorganization on August 13, 1992. Debtor wants to assume the franchise as an executory contract under the reorganization plan.

The City contends that its residents are not happy with Debtor's service. The residents complain that Debtor's prices are too high. The City wants to operate its own cable system. The City, therefore, does not consent to Debtor assuming the franchise.

The City contends that it has authority to regulate the operation of cable television within its territorial limits. *See* 47 U.S.C.A. §§ 521–59 (West 1991); Tenn. Code Ann. § 7–59–102 (1985).[1] Debtor does not dispute this contention.

■ The Debtor cites section 365(f) of the Bankruptcy Code,[2] which provides that an executory contract may be assigned notwithstanding a nonassignment provision in the contract or in applicable law, except as provided in section 365(c) of the Bankruptcy Code.[3]

Although section 365(f) deals with assignment and the issue before this Court is assumption, the Court notes that the 'applicable law' in question is section 12 of the City's ordinance. That section of the ordinance is preempted by section 365(f) of the Bankruptcy Code. *See Goerg v. Parungao (In re Goerg)*, 844 F.2d 1562, 1565 (11th

---

1. Tennessee Code section 7–59–102(a) provides:

   Franchise licenses.—(a) The governing body of each municipality in each county in this state shall have the power and authority to regulate the operation of any cable television company which serves customers within its territorial limits by the issuance of franchise licenses after public notice and showing the terms of any proposed franchise agreement and public initiation for fees and not inconsistent with any rules and regulations of the federal communications commission.

   Tenn.Code Ann. § 7–59–102(a) (1985).

2. 11 U.S.C.A. § 365(f) (West 1979). This section provides:

   (f)(1) Except as provided in subsection (c) of this section, notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease under paragraph (2) of this subsection.

   (2) The trustee may assign an executory contract or unexpired lease of the debtor only if—

   (A) the trustee assumes such contract or lease in accordance with the provisions of this section; and

   (B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

   (3) Notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law that terminates or modifies, or permits a party other than the debtor to terminate or modify, such contract or lease or a right or obligation under such contract or lease on account of an assignment of such contract or lease, such contract, lease, right, or obligation may not be terminated or modified under such provision because of the assumption or assignment of such contract or lease by the trustee.

   11 U.S.C.A. § 365(f) (West 1979).

3. 11 U.S.C.A. § 365(c) (West Supp.1992).

Cir.1988), *cert. denied,* 488 U.S. 1034, 109 S.Ct. 850, 102 L.Ed.2d 981 (1989) (federal bankruptcy law preempts state law). Simply stated, section 365(f) is not controlling, and Debtor can assume the franchise unless the restriction in section 365(c) applies.

■ The City contends that section 365(c)(1) of the Bankruptcy Code [4] prohibits Debtor from assuming the franchise without its consent. This section provides:

(c) The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if—

(1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and

(B) such party does not consent to such assumption or assignment; or

11 U.S.C.A. § 365(c)(1) (West Supp.1992).

Litigation involving section 365(c)(1) has focused on two issues. The first issue is whether, as Debtor contends, the restriction on the right to assume or assign an executory contract is limited to personal service contracts. A number of bankruptcy court decisions support this view. *See In re Raby,* 139 B.R. 833, 835–36 (Bankr. N.D.Ohio 1991); *In re Sunrise Restaurants, Inc.,* 135 B.R. 149, 153 (Bankr. M.D.Fla.1991); *Secretary of the Army v. Terrace Apartments, Ltd. (In re Terrace Apartments, Ltd.),* 107 B.R. 382, 384 (Bankr.N.D.Ga.1989); *Abney v. Fulton County, Georgia (In re Fulton Air Service, Inc.),* 34 B.R. 568, 572 (Bankr.N.D.Ga. 1983); *In re Taylor Mfg., Inc.,* 6 B.R. 370, 372 (Bankr.N.D.Ga.1980).

Three circuit courts of appeal have held that section 365(c)(1) is not limited to personal service contracts. *In re West Electronics, Inc.,* 852 F.2d 79 (3rd Cir.1988) (debtor in possession cannot assume con-

tract to supply missile launcher without consent of federal government); *In re Pioneer Ford Sales, Inc.,* 729 F.2d 27 (1st Cir.1984) (automobile franchise not assignable to third party); *Pension Benefit Guaranty Corp. v. Braniff Airways (In re Braniff Airways, Inc.),* 700 F.2d 935 (5th Cir.1983) (landing slots at airport not assignable).

■ The second issue discussed in the case law is whether section 365(c)(1) is applicable when the debtor in possession, rather than a third party, wants to assume the executory contract.

In *In re West Electronics, Inc.,* the Court of Appeals for the Third Circuit articulated a "hypothetical test" under section 365(c)(1). The circuit court stated:

Thus, if non-bankruptcy law provides that the government would have to consent to an assignment of the West contract to a third party, *i.e.,* someone "other than the debtor or the debtor in possession," then West, as the debtor in possession, cannot assume that contract. This provision limiting assumption of contracts is applicable to any contract subject to a legal prohibition against assignment. *See In re Pioneer Ford Sales, Inc.,* 729 F.2d 27 (1st Cir.1984); *In re Braniff Airways, Inc.,* 700 F.2d 935, 943 (5th Cir.1983).

. . . .

West argues that 41 U.S.C. § 15 should not be construed to foreclose an assignment of a contract from a debtor to a debtor in possession since they are such closely related entities. West's argument misses the point, however, for 11 U.S.C. § 365(c)(1) creates a hypothetical test—*i.e.,* under the applicable law, could the government refuse performance from "an entity *other* than the debtor or the debtor in possession." [Emphasis added]. Thus, the relevant inquiry is not whether 41 U.S.C. § 15 would preclude an assignment from West as a debtor to West as a debtor in possession, but whether it would foreclose an assign-

---

**4.** 11 U.S.C.A. § 365(c)(1) (West Supp.1992).

ment by West to another defense contractor.

The literal meaning of the words chosen by Congress clearly requires the analysis and conclusion we have just articulated and we are confident that it is what Congress intended. We think that by including the words "or the debtor in possession" in 11 U.S.C. § 365(c)(1) Congress anticipated an argument like the one here made and wanted that section to reflect its judgment that in the context of the assumption and assignment of executory contracts, a solvent contractor and an insolvent debtor in possession going through bankruptcy are materially distinct entities. While the relevant case law is very sparse, it supports our understanding of the interplay between 11 U.S.C. § 365(c)(1) and 41 U.S.C. § 15. *See In re Adana Mortgage Bankers, Inc.*, 12 B.R. 977 (Bankr.N.D.Ga.1980); *see also In re Pennsylvania Peer Review Organization, Inc.*, 50 B.R. 640 (Bankr.M.D.Pa.1985).

852 F.2d at 83.

Judge Leon Higginbotham, Jr., dissented, in part, and stated:

I join in all parts of Judge Greenberg's thoughtful opinion except as to Part III because I do not believe that a "solvent contractor and an insolvent debtor in possession going through bankruptcy," at 83, are *different* entities for the purposes of the Non–Assignment Clause. The interpretation of the *Adana* court notwithstanding, I think that that provision really meant to avoid having the U.S. government contractually bound to a wholly separate entity that received an assignment from the actual contracting party. I do not believe that when it enacted Section 15 of Title 41, Congress considered the issue of whether a debtor in possession should be viewed as a party different than the debtor.

852 F.2d at 84.

Several bankruptcy courts have rejected the hypothetical test and held that section 365(c)(1) is not applicable when the debtor in possession seeks to assume the executory contract. *See In re Fastrax*, 129 B.R. 274, 277–78 (Bankr.M.D.Fla.1991) (debtor in possession can assume but not assign a personal service contract if the performance will be the same as if no bankruptcy case had been filed).

The Court is persuaded that section 365(c)(1) does not prevent James Cable Partners, L.P., from assuming the franchise. James Cable Partners, L.P., does not seek to assign the franchise to a third party. Whether the term is "debtor" or "debtor in possession," it is the same entity that existed before the filing of the bankruptcy petition that seeks to assume the franchise. *See National Labor Relations Board v. Bildisco and Bildisco*, 465 U.S. 513, 528, 104 S.Ct. 1188, 1197, 79 L.Ed.2d 482 (1984). If Debtor's performance under the franchise agreement is not satisfactory, the City can present that issue to a court of competent jurisdiction. In ruling on the issue of assumption, the Court need not consider the City's assertion that it is not satisfied with Debtor's performance. The Court is persuaded that allowing Debtor to assume the franchise is consistent with the intent of Congress.

An order in accordance with this memorandum opinion will be entered this date.